UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARTHUR J. WEIGAND,

                              Plaintiff,

        -vs-

NIAGARA FRONTIER TRANSPORTATION
AUTHORITY,
NIAGARA FRONTIER TRANSIT METRO SYSTEM,
INC., a Subsidiary of Niagara Frontier Transportation
Authority, and
CHRISTOPHER ANTHOLZNER, ANTHONY SCHILL,
and JOHN H. MACVITTIE, as Employees of Niagara
Frontier Transit Metro System, Inc. and the Niagara
Frontier Transportation Authority,

                              Defendants.

**DECISION AND ORDER**
03-CV-794S

## I. INTRODUCTION

Plaintiff Arthur J. Weigand commenced this action on October 24, 2003, and filed an Amended Complaint on November 17, 2003. Therein, he alleges that he was discriminated against on the basis of a disability, and terminated from his position as a bus mechanic with the Niagara Frontier Transit Metro System, Inc. ("Metro"), in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§12112 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §791 *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. §1981(a), and the New York State Human Rights Law ("HRL"), N.Y. Exec. Law §§ 290 *et seq.* Plaintiff is suing Metro, the Niagara Frontier Transportation Authority ("NFTA"), and three Metro supervisory employees (collectively "Defendants"). Currently before the Court

1

is Defendants' Motion for Summary Judgment. (Docket No. 17).[1]  For the reasons stated herein, the motion is granted.

## II.  BACKGROUND

### A.  The Amended Complaint

Plaintiff alleges in his Amended Complaint that, beginning on or about September 3, 1992, Defendants failed to accommodate his disability, discriminatorily denied him shift selection rights, job opportunities, overtime, and training, educational, and in-service opportunities offered to non-disabled employees in the same job title, and assigned him to degrading and menial tasks outside his classification.  (Docket No. 3 ¶¶ 20-22, 27-28.) He further claims that Defendants effectively terminated him on June 4, 1994 because of his disability, and did not return him to work until March 26, 1996.  (*Id.* ¶¶24-25, 29.)

### B.  The Relevant Facts

The following facts are drawn from the record and, unless otherwise noted, are not disputed.

Defendant NFTA is a public authority and a public benefit corporation organized and

---

[1] In support of their motion, Defendants filed the Affidavit of Susan P. Wheatley, Esq., sworn to December 11, 2006, with Exhibits A - YY (Docket Nos. 17 - 24), a Memorandum of Law (Docket No. 29), Local Rule 56.1 Statement of Undisputed Material Facts (Docket No. 26), and Reply Memorandum of Law (Docket No. 33).
  In opposition to the motion, Plaintiff filed a Memorandum of Law with Exhibits A - Y (Docket No. 30), the Affidavit of Mark G. Farrell, Esq., sworn to January 26, 2007 (Docket No. 31), and the Affidavit of Arthur G. Weigand, sworn to January 26, 2007 (Docket No. 32).
  Plaintiff did not file a separate statement of material facts as to which it is contended there exists a genuine issue to be tried, as required by Local Rule 56.1(b).  However, Plaintiff's Memorandum of Law references the Farrell Affidavit as containing "a full treatment of the relevant facts . . . ." (Docket No. 30 at 2.) To the extent the affidavit identifies an issue of fact supported by citation to the record, the matter will be considered.  Otherwise, Defendants' Statement shall be deemed admitted, per Local Rule 56.1(c).

existing under New York State Law. (¶ 1.)[2] Defendant Metro, a wholly-owned subsidiary of the NFTA, also is a public benefit corporation. (¶ 1.) Together, the NFTA and Metro own and operate various transportation services, including the public bus transportation system in Erie and Niagara counties in Western New York. (¶ 2.) Metro is responsible for the day-to-day operation of the bus system, and Metro buses operate from and are repaired at three garages: Frontier, Babcock, and Cold Spring. (¶ 3.)

Plaintiff Weigand, who holds an associate degree in automotive technology, commenced employment at Metro on June 7, 1982. During the time period relevant here, Weigand was employed as a Garage Mechanic A—Utility, at Frontier Garage. (¶¶ 10,12.) The position description for that title includes, *inter alia*, the following responsibilities: "[d]iscover and diagnose unserviceable or defective conditions, plan and make adequate repairs or adjustments to vehicle components[, m]ake routine mileage and periodic inspections and repairs[, t]est, remove, repair or replace and adjust all units, parts and components[, and p]erform any or all of the work assigned as duties for any jobs in subordinate or comparable classifications . . . ." (¶¶ 6, 12, Defs' Ex. M.) Mechanic positions are among several Metro job titles represented by the Amalgamated Transit Union Local 1342 ("ATU"). (¶¶ 4, 11.) The collective bargaining agreement between ATU and Metro governs, *inter alia*, shift selection, days off, and overtime. (¶ 11.)

On or about January 30, 1992, Weigand sustained an injury to his neck while at work (¶ 13), and was placed on a workers' compensation leave of absence (¶ 14). Approximately seven months later, Weigand sought to return to work and presented to

---

[2] Unless otherwise noted, all ¶ references in this section are to Docket No. 26 – Defendant's Statement of Undisputed Material Facts.

NFTA/Metro a note from his physician, dated August 11, 1992, stating that he had a "Herniated Disc neck," and "May return to work 8-17-92" with a "Return to work restriction weight lifting 50 pounds." (¶ 15, Defs' Ex. N.) Prior to his injury, Weigand's job had required that he lift bus batteries, alternators, and tires, all weighing more than 50 pounds. (¶ 17.)

According to NFTA/Metro's Occupational Nurse, Mary Carol Saxe, mechanics generally can not be returned to work with a 50-pound lifting limitation, and Weigand testified that Saxe told him he could not return to his Mechanic position with that restriction. (¶ 20.) One of Weigand's former supervisors, Howard Scholl, Sr., testified that he could not use personnel on light-duty for regular mechanic's work because of the lifting required in Mechanic A and lower included classifications. (¶¶ 18-19.)

Nevertheless, around the time Weigand sought to return to work, NFTA and Metro were in the process of developing an Early Return to Work ("ERTW") Program for use by both entities, one purpose of which was to provide a work-hardening program to transition injured employees to full-duty status. (¶ 21.) Although the ERTW was still under development, Weigand was permitted to return to full-time work at Frontier Garage on or about September 3, 1992, at Mechanic A pay but with modified assignments. (¶¶ 22, 23, 30.)

On September 18, 1992, Plaintiff complained that he was asked to lift a bus battery with another employee. His supervisors weighed the battery, and after determining its weight exceeded 100 pounds, did not require Plaintiff to assist with the assigned task. Nevertheless, Plaintiff complained of disability discrimination to NFTA/Metro's EEO office, and also filed a grievance, which ATU did not take to arbitration. (¶ 30.)

In October 1992, Weigand participated in a quarterly work assignment "pick." He selected his pre-injury job, but his selection was rescinded due to Defendant Antholzner's conclusion that his former position required such heavy-duty tasks as prying, lifting, and removing bus chassis components. Instead, Weigand was assigned to fill a different Mechanic A position on his same shift. (Defs' Ex. Z at 4.) Weigand filed a grievance that the ATU did not take to arbitration. (¶ 31.)

Due to various collective bargaining issues raised over the ERTW, the ATU did demand, in October 1992, that Metro engage in impact negotiations. (¶¶ 24, 25.)

In or about December 1992, Weigand and other ERTW employees were directed to report to Metro's Rail Department to clean light-rail transit cars. After Weigand complained to his union, he was not required to perform that task. (¶ 33; Defs' Ex. A at 184-88.)

In January 1993, Metro offered maintenance training for buses fueled by natural gas. ERTW participants were permitted to enroll in company training courses if class size permitted and there was no overtime involved. (Defs' Ex. AA.) NFTA/Metro offered Weigand the opportunity to attend by switching shifts on the training days to avoid overtime, but he refused. His request to attend on overtime hours was denied. Weigand filed a grievance over the matter, which the ATU did not take to arbitration. (¶ 34.)

In April 1993, Weigand made a written request for a six-month change from his customary second shift to the first shift for "personal reasons." (¶ 36, Defs' Ex. BB.) Defendant Antholzer denied the request on operational grounds. (¶ 36.) Weigand's counsel attests that, though Weigand did not commit a specific reason to writing, Defendant Antholzner and Frontier Supervisor Komenda were aware that his request was

5

prompted by his infant daughter's medical condition, thereby creating a question of fact as to Antholzner's motivation. (Docket No. 31 ¶ 13.) Weigand testified to the contrary during his deposition. While he believed the written request went to Antholzner, the only individuals he explained the "personal reasons" to were Pat O'Connell, his union steward, and Lothar Gmeinder, a foreman who was not involved in the decision to deny the request. (Defs' Ex. A at 55, 67, 142, 196-97.)

In July 1993, Weigand underwent an independent medical exam and it was determined he had a mild, partial disability. The examining physician, Dr. Cisek, recommended that the 50-pound lifting limitation remain in place, but opined that perhaps in another six months Weigand could return to unrestricted duty. (¶ 40, Defs' Ex. DD.)

In or before November of 1993, a draft set of rules for ERTW, developed with union input, was circulated. (¶¶ 25, 26.) The rules provided that an ERTW employee could bid on a position only if he or she could perform all functions of the position, and prohibited ERTW employees from working overtime without prior authorization. (¶ 26.) In other words, while ERTW employees were guaranteed full-time pay, certain collective bargaining rights extended to full-duty employees did not apply to them. (¶ 27.) In November 1993, Metro and ATU also agreed that ERTW status would be limited to one year, extended to fifteen months for employees, like Weigand, who had returned to work on limited duty prior to November 8, 1993. (*Id.*)

At his deposition, Weigand claimed that his name was removed from the mechanic's overtime list and also from the relief storeroom clerk list while he participated in ERTW. (¶ 39.) Weigand has not explained how the former is inconsistent with the ERTW rule that participants be approved in advance for overtime. And, in fact, Weigand testified and has

6

submitted documentation confirming that he was approved for overtime hours after his return to work in 1992. (Defs' Ex. A at 112-114; Pl's Ex. B.) With regard to relief storeroom clerk, Weigand conceded the position requires lifting in excess of his 50-pound limitation. (¶ 39; Defs' Ex. A at 192-93, 203-204.)

On November 17, 1993, NFTA/Metro advised Weigand that his 15 months' participation in ERTW would expire on December 10, 1994. (¶ 41.) However, it later decided to extend Weigand's time in the program and send him for a functional capacity evaluation. (¶ 42.)

Thereafter, on December 21, 1993, Metro was advised that its ERTW funding for the fiscal year beginning April 1, 1994 would be cut. (¶ 43.)

Weigand's functional capacity exam, originally scheduled for March 24, 1994, eventually took place on April 5, 1994. (¶42; Defs' Ex. GG.) At that time, Weigand had been in the ERTW program for 79 weeks—the longest tenure of any ERTW employee. Upon examination, it was recommended that the 50-pound lifting limitation be continued, either by delegating certain of Weigand's Mechanic A duties to other employees, or placing him in a different position consistent with his restriction. (*Id.*) In short, Dr. Cisek's hope that Weigand could return to unrestricted activity in or about January 1994 did not materialize. Subsequent evaluations continued to recommend the 50-pound lifting restriction. (Docket No. 31 ¶¶ 15-16; Pl's Exs. J, L; Defs' Ex. TT.)

Metro was advised it would have to reduce its number of ERTW employees from 26 to 11 due to the funding cuts. Defendant MacVittie was directed to review the status of ERTW participants and make recommendations as to who should remain in the program. (¶¶ 44-45.) MacVittie noted that Weigand had been in the program for 79

weeks, and while he was probably 85 percent healed from his injury, had not shown any significant progress toward return to full duty in quite some time. (¶ 45; Ex. NN.) It was recommended that Weigand be dropped from the ERTW program effective June 5, 1994. (*Id*.; and ¶46.)

By memo dated May 18, 1994, Weigand was informed that his ERTW participation would end at his shift end on June 4, 1994, unless he was able to perform his full-duty position as of that date. (¶ 47.) Weigand was unable to do so and was returned to workers' compensation leave status. (*Id.*)

In February 1996, another functional capacity evaluation was conducted. The report indicated that Weigand could return to work with no restriction on the amount of weight lifted, but some restriction on frequency. (¶ 54.) NFTA/Metro advised Weigand that if his physician would submit a return to work consistent with the findings of the evaluation, he would be cleared to return. (*Id.*) Thereafter, Weigand submitted a note from his physician stating "I agree with F.C.E. of 2-20-96 . . . May Return to Work 3-25-96," and was returned to work on March 25, 2006. (¶ 55; Defs' Ex. YY.)

The Amended Complaint does not identify the accommodations NFTA and Metro allegedly refused Weigand. (Docket No. 1 ¶ 27 (alleging denial of "general accommodation of his disability".) At his deposition, he stated he requested and was refused "[m]y seniority rights to pick a job, my right to work overtime, my right to be able to come and go like all the rest of the employees" and "to be treated fairly without bias or discrimination or harassment." (¶ 56; Defs' Ex. A at 204-205.)

C.  Procedural History

According to the Amended Complaint, Weigand filed an administrative complaint with the New York State Division of Human Rights on September 13, 1994.  (Docket No. 1 ¶ 30.)  He claims to have filed a separate charge with the United States Equal Employment Opportunity Commission ("EEOC") on that same date.  (*Id*. ¶ 31.)  At the request of Weigand's counsel, the EEOC issued a "Notice of Right to Sue" almost nine years later, on July 24, 2003.

Weigand commenced this action on October 24, 2003, alleging that Defendants failed to accommodate his disability and discriminated against him based on his disability.  Defendants have moved for summary judgment dismissing the Complaint in its entirety.

## III.  DISCUSSION

A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Id.*  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving

party's claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

In the context of employment discrimination cases, the Second Circuit has cautioned district courts to use care in granting summary judgment to an employer in a discrimination case where "the merits turn on a dispute as to the employer's intent." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) (citations omitted). However, "the summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Id*.

**B. Defendants' Motion**

The Amended Complaint asserts four claims against all Defendants: disability discrimination in violation of the ADA (First Claim); disability discrimination in violation of the Rehabilitation Act of 1973 (Second Claim); disability discrimination in violation of the HRL (Third Claim); and a claim for punitive damages (Fifth Claim). Plaintiff also seeks to recover against NFTA and Metro only, on what appears to be a common law claim for "wrongful termination" (Fourth Claim).

Defendants move for summary judgment on all claims. On the federal claims, Defendants contend that Weigand has not established a *prima facie* case of disability discrimination under the ADA or the Rehabilitation Act and, were the Court to find otherwise, Defendants have articulated legitimate non-discriminatory reasons for their actions and there is no evidence of pretext. They further urge that there is no individual liability under the federal statutes. With regard to the HRL claim, Defendants argue they had no statutory duty to provide reasonable accommodation during the time period at issue here, and Weigand otherwise fails to establish a *prima facie* case of disability discrimination. They further contend that the circumstances do not support a finding of individual liability under the HRL. Next, Defendants argue that punitive damages are unavailable under the ADA, the Rehabilitation Act, or the HRL. Finally, they contend that all Defendants enjoy sovereign immunity from suit, thereby requiring dismissal of all claims.

This Court will address the arguments in turn, as necessary.

## C. Plaintiff's ADA and Rehabilitation Act Claims

### 1. *The Burden-Shifting Framework*

Claims of employment discrimination under the ADA and the Rehabilitation Act are examined according to the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Graves v. Finch Pruyn & Co., 09-1444-CV, 2009 U.S. App. LEXIS 25142, at *3, 22 Am. Disabilities Cas. 1039 (2d Cir. Nov. 17, 2009) (ADA); Regional Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48-49 (2d Cir. 2002) (Rehabilitation Act). Under McDonnell Douglas, a plaintiff has the initial burden to establish a *prima facie* case of disability discrimination. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

If the plaintiff succeeds, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its action. Weinstock, 224 F.3d at 42 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). If the defendant makes this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42 (citing Sto Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1994)).

Once the employer had articulated a neutral reason, the plaintiff must present evidence that would permit a rational fact finder to infer that the employer's action was more likely than not based on intentional discrimination. Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (citations omitted). However, "it is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional

12

discrimination." Weinstock, 224 F.3d at 42 (quoting St. Mary's, 509 U.S. at 519).

### 2. *The Prima Facie ADA and Rehabilitation Act Cases*

To establish his *prima facie* case of failure to accommodate under the ADA, Weigand must show that: (1) he is a person with a disability under the meaning of the statutes; (2) NFTA and Metro are covered by the statutes and had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the Mechanic A position; and (4) NFTA and Metro refused to make such accommodations. Petrunti v. Cablevision, 08-CV-2277, 2009 U.S. Dist. LEXIS 121370, at *19 (E.D.N.Y. Dec. 30, 2009).

For a *prima facie* case of disparate treatment based on disability, the first two elements are the same. In addition, a plaintiff must show that: (3) he can perform the essential functions of his job, with *or without* a reasonable accommodation; and (4) he was subject to an adverse employment action because of his disability. Curry v. Federal Express Corp., 03-CV-619, 2006 U.S. Dist. LEXIS 22986, at *22 (W.D.N.Y. Mar. 27, 2006) (citing Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998)). Defendants urge that they are entitled to summary judgment on Weigand's ADA claim because he has not established the first, third, and fourth elements of his *prima facie* case.[3]

#### a. *The Disability Determination*

The ADA prohibits discrimination against "a qualified individual with a disability" in

---

[3] Weigand's ADA and Rehabilitation Act claims are considered together because the statutes "impose identical requirements." Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999); Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). Thus, further reference to the ADA should be read as including the Rehabilitation Act.

13

regard to terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). The Rehabilitation Act prohibits discrimination against an "otherwise qualified individual with a disability" under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a). Thus, an individual who is not disabled within the meaning of these statutes cannot invoke their protections.

In determining whether a plaintiff has a disability for purposes of the ADA or the Rehabilitation Act, the Second Circuit has "applied the three-step approach taken by the Supreme Court in Bragdon v. Abbott, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998)." Weixel v. Board of Educ. of City of New York, 287 F.3d 138, 147 (2d Cir. 2002) (citing Colwell v. Suffork County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998)). Under this approach:

> plaintiff must first show that [he] suffers from a physical or mental impairment. Second, [the] plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. In addition, the Supreme Court has recently clarified that the identified major life activity must be "of central importance to daily life." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002).

Weixel, 287 F.3d at 147 (internal citations omitted) (alterations added).

Here, Defendants do not dispute that Weigand suffered from a physical impairment within the meaning of the ADA and the Rehabilitation Act. 29 C.F.R. 1630.2(h)(1); 29 U.S.C. § 705.9. They do, however, urge that Weigand was not substantially limited in a major life activity and, therefore, he is not disabled within the meaning of the statutes. For the reasons discussed below, this Court agrees.

The term "major life activity" includes "functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Although this is not an exclusive list, Ryan v. Grae & Rybicki, 135 F.3d 867, 870 (2d Cir. 1998), this Court need look no further here. Upon review of the record, the only major life activity arguably implicated by Weigand's 50-pound lifting limitation is "working."[4] Thus, this Court must determine whether Weigand has made a *prima facie* showing that his impairment "substantially limited" his ability to work.

An impairment "substantially limits" the major life activity of working if an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). "The inability to perform a single, particular job," however, "does not constitute a substantial limitation in the major life activity of working." *Id.*; *see also*, Giordano v. City of New York, 274 F.3d 740, 747-48 (2d Cir. 2001); Curry, 2006 U.S. Dist. LEXIS 22986, at *27-28.

Here, Weigand concedes, and the record reflects, that he was able to work full-time for NFTA/Metro within his lifting restriction by performing light to medium-duty tasks in his own and other job classifications. He has presented no evidence suggesting that he was limited in his ability to perform the essential functions of any job other than his particular, pre-injury position, which required lifting bus components in excess of his 50-pound restriction. At most, Weigand has demonstrated that his injury precluded him from working in positions for which heavy lifting is an essential function. From there, no rational jury could conclude that Weigand's injury prevented him from working in either a class of jobs

---

[4] In his opposing memorandum of law, Weigand confirms that working is the only major life activity limited by his injury and related lifting restriction. (Docket No. 30 at 7-8.)

or a broad range of jobs. *See, e.g.*, Muller v. Costello, 187 F.3d 298, 313 (2d Cir. 1999) (plaintiff was not substantially limited in major life activity of working where he "presented no evidence that he was precluded from jobs other than correctional officer in his geographic area"); Colwell, 158 F.3d at 644 (plaintiff not substantially limited in major life activity of working because "impairment disqualif[ied] him 'from only a narrow range of jobs' (those involving physical confrontation)") (alteration in original); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 724 (2d Cir. 1994) ("Here plaintiff was medically restricted from working in only one place in the hospital—the blood bank . . . . Heilweil was not therefore a handicapped person under the [Rehabilitation] Act when she was discharged."); Petrunti, 2009 U.S. Dist. LEXIS 121370, at *24-26 (finding plaintiff was not substantially limited in major life activity of working where her claimed disability disqualified her only from jobs requiring use of headphones); Curry, 2006 U.S. Dist. LEXIS 22986, at *5, 28-29 (holding no reasonable jury could find plaintiff's lifting restriction rendered her disabled within the meaning of the ADA); Ongsiako v. City of New York, 199 F. Supp. 2d 180, 185-86 (S.D.N.Y. 2002) (finding "no evidence from which a rational juror could infer that his impairment precluded him from performing a 'broad class of jobs'" where back injury precluded him from working only in jobs requiring heavy lifting). In sum, Weigand's inability to perform all essential functions of his preferred job does not render him disabled within the meaning of the ADA or Rehabilitation Act.

In response, Weigand urges that the New York State Division of Human Rights' determination that he was disabled is sufficient to establish his *prima facie* case.[5] It is well-

---

[5] Weigand has submitted an inter-office memo from the DHR, captioned "Final Investigation Report and Basis of Determination." (Pl's Ex. N.)

settled that the HRL defines "disability" more broadly than the ADA and Rehabilitation Act. *See* Treglia v. Town of Manlius, 313 F.3d 713, 723-24 (2d Cir. 2002); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 233 (2d Cir. 2000) (per curiam). "[A]n individual can be disabled under the [NYHRL] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities." Reeves v. Johnson Controls World Servs., 140 F.3d 144, 155 (2d Cir. 1998) (internal quotation marks omitted; alteration in original); N.Y. EXEC. LAW § 292(21). The DHR's application of a broader disability definition is of no relevance to a determination on Weigand's federal claims.

Weigand next argues that various doctors' notes and reports, as well as NFTA/Metro documents discussing his lifting limitation, are proof of his disability. But, to establish a disability under the ADA or Rehabilitation Act, an individual must do more than "merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience . . . is substantial.'" Toyota, 534 U.S. at 198 (quoting Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 567, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999)) (alteration in original). In short, the mere fact that a physician places restrictions on an individual or labels him "disabled" does not, standing alone, establish the existence of a disability within the meaning of the ADA and Rehabilitation Act.

The same holds true for Weigand's further suggestion that his placement in NFTA/Metro's ERTW Program establishes that he is "disabled" within the meaning of the statutes. His employer's acknowledgment that he was injured and had a lifting restriction

17

is not evidence that he was disabled.

For all of the reasons stated, this Court finds Weigand has failed to establish that he is "disabled" within the meaning of the ADA and Rehabilitation Act. Because he has failed to establish he is an individual with a disability, this Court need not consider the remaining elements of his *prima facie* case. Summary judgment on his federal discrimination claims is warranted as a matter of law.

### D. Plaintiff's State Law Claims

Having disposed of Plaintiff's federal claims, this Court finds it most appropriate to decline to exercise supplemental jurisdiction over Plaintiff's state claims. *See* 28 U.S.C. § 1367(c)(3). Plaintiff's remaining claims are state law causes of action under the HRL and common law.

The United States Supreme Court has instructed that courts ordinarily should decline to exercise supplemental jurisdiction in the absence of federal claims. *See* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view; where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); *see also*, Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); Powell v. Gardner, 891 F.2d 1039, 1047 (2d Cir. 1989) ("in light of proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over Powell's state-law claims against the County").

Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will instead dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). See Mayer v. Oil Field Sys. Corp., 620 F. Supp. 76, 77-78 (S.D.N.Y. 1985) ("The exercise of [supplemental] jurisdiction . . . where the federal claims have been dismissed on summary judgment before trial would be inappropriate absent exceptional circumstances. Since [N.Y. C.P.L.R. § 205(a)] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations, [the plaintiff] will not be unduly prejudiced by the dismissal of her state law claims.") As previously noted, Weigand's failure to establish that he was "disabled" under federal law does not foreclose his claim under the HRL. As the Second Circuit has expressly noted:

> We think that in the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by the New York state and municipal law is a question best left to the courts of the State of New York . . . .

Giordano, 274 F.ed at 754.

Consistent with the foregoing, this Court declines to exercise supplemental

19

jurisdiction over Weigand's state law claims.[6]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted as to all federal claims. This Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. Accordingly, Defendants' Motion is granted in its entirety.

## ORDERS

IT HEREBY IS ORDERED that Defendants' Motion for Summary Judgment (Docket No. 17) is GRANTED.

FURTHER that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED

Dated:     February 15, 2010
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court

---

[6] While Defendants did not urge jurisdictional considerations as a basis for dismissing the state law claims, this Court has an obligation to consider, *sua sponte*, its exercise of supplemental jurisdiction.